UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL ADRIANNE SMITH,<br><br>      Plaintiff,<br><br>v.<br><br>ANDY COOK,<br><br>      Defendant. | Case No.: 17-cv-00961-AJB-WVG<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT'S MOTION TO DISMISS AS MOOT;**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT;**<br><br>**(3) DENYING PLAINTIFF'S MOTION TO CHANGE VENUE;**<br><br>**(4) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND;**<br><br>**(5) DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR REPLY; AND**<br><br>**(6) DENYING DEFENDANT'S MOTION FOR ORDER DECLARING PLAINTIFF A VEXATIOUS LITIGANT** |

(Doc. Nos. 58, 60, 67, 71, 90, 93)

Pending before the Court are six motions: (1) Defendant Andy Cook's motion to dismiss, (Doc. No. 58); (2) Plaintiff Carol Smith's motion for declaratory judgment, (Doc. No. 60); (3) Plaintiff's motion to transfer venue, (Doc. No. 67); (4) Plaintiff's motion for leave to amend, (Doc. No. 71); (5) Plaintiff's motion for leave to file a sur-reply, (Doc. No. 90); and (6) Defendant's motion for an order declaring Plaintiff a vexatious litigant, (Doc. No. 93). Plaintiff and Defendant both filed oppositions to the appropriate motions. (Doc. Nos. 79, 81, 82, 92, 96.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the matters suitable for determination on the papers and without oral argument. As will be explained in greater detail below, the Court **GRANTS** Plaintiff's motion for leave to amend, **DENIES AS MOOT** her motion to file a sur-reply, and **DENIES** both her motion to transfer venue and motion for declaratory judgment. As to Defendant's motions, the Court **DENIES AS MOOT** his motion to dismiss and **DENIES** his motion for an order declaring Plaintiff a vexatious litigant.

**I.      BACKGROUND**

A.      Factual Background

The instant case centers around the legal services Defendant provided to Plaintiff as her attorney in Plaintiff's child support case. (Doc. No. 55 ¶ 9.) Plaintiff is a stay at home military mother that homeschools her son William. (*Id.* ¶ 11.) In 2005, Plaintiff, her husband, and their son were living in Oregon. (*Id.* ¶ 10.) Three years later, William's father moved to California and sued Plaintiff. (*Id.* ¶ 14.)

During the first six months of the lawsuit, Plaintiff states that her and her husband worked together amicably to create a marital settlement agreement. (*Id.* ¶ 15.) Plaintiff's husband then filed a motion in California to reduce his child support payments. (*Id.* ¶ 17.) As a result, Plaintiff hired Defendant to assist her in her case against her husband. (*Id.* ¶ 18.)

2

Unfortunately, according to Plaintiff, Defendant failed as her legal counsel on several levels. For instance, Plaintiff asserts that Defendant worked with her ex-husband in California, criminally instructed her to sue her previous family attorney, manipulated the California family courts, worked against Plaintiff based partially on her African-American heritage, and is currently, illegally pursuing a debt against her. (*Id.* ¶¶ 24, 25, 26, 29, 66.) Most notably, Plaintiff alleges that Defendant "never created [the] proper child support paperwork," never created the "proper medical care judgment" for her son, and as a result, Plaintiff did not receive the "basic standard of care." (*Id.* ¶¶ 48, 51, 52.) Furthermore, Plaintiff contends that Defendant has continued to request unlawful status hearings in California state court and made numerous false statements during state court hearings to the state court judge. (*Id.* ¶¶ 67–70.)

In sum, Plaintiff states that she has suffered financial and emotional distress based on Defendant's purportedly racist actions. (*Id*. ¶¶ 82, 83.) Thus, Plaintiff brings this lawsuit alleging violations of the Federal Debt Collection and Practices Act, the California Unruh Civil Rights Act, Fraud, Breach of Fiduciary Duty, as well as several other claims such as "indirect evidence," "declaratory witness," and "abuse of process." (*See generally* Doc. No. 55.)

B.  Procedural Background

Plaintiff filed her initial complaint on May 8, 2017. (Doc. No. 1.) Thereafter, Plaintiff was granted leave to proceed in forma pauperis. (Doc. No. 5.) On June 20, 2017, Plaintiff filed her first amended complaint, (Doc. No. 8), and then Defendant filed his motion to dismiss, (Doc. No. 18). Plaintiff then proceeded to file a myriad of motions including a motion for attorney's fees and withdrawal of Defendant attorneys, (Doc. No. 22), a motion for sanctions, (Doc. No. 32), a motion for declaratory judgment, (Doc. No. 43), and a motion for leave to file a second amended complaint, (Doc. No. 49).

On March 20, 2018, Plaintiff filed another case in federal court. (18-cv-00572-AJB-WVG, Doc. No. 1.) Plaintiff's two federal cases were then consolidated and Plaintiff was instructed to file a single complaint that covered all of her claims. (Doc. No. 54.) The

instant motions were then filed in May and July of 2018. (Doc. Nos. 58, 60, 67, 71, 90, 93.)

## II. DISCUSSION

### A. Plaintiff's Motion to Transfer Venue

To support a motion to transfer venue, the moving party must establish that (1) venue is proper in the original district; (2) the transferee district is one where the action could have been brought; and (3) the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice. *See Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1155–56 (N.D. Cal. 2009).

Under 28 U.S.C. § 1404(a), the district court has discretion to "adjudicate motions for transfer [of venue] according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1109 (C.D. Cal. 2007) (citation omitted). A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case: "(1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative considerations." *Id.* "The burden is on the moving party to establish that a transfer would allow a case to proceed more conveniently and better serve the interests of justice." *Id.*

Plaintiff requests a change of venue to the United States District Court in Oregon. (*See generally* Doc. No. 67.) Plaintiff argues transfer is appropriate so that she may receive her day in court, that appearing in California prejudices her and her son, and that she has ten witnesses in Oregon who have witnessed her suffering. (*Id.*) The Court notes that the majority of Plaintiff's motion repeats the allegations pled in her complaint. (*Id.*) In opposition, Defendant asserts that a change of venue would not promote the public policy behind 28 U.S.C. § 1404(a) and that there are no grounds to transfer venue. (*See generally* Doc. No. 81.)

Ultimately, the Court finds that Plaintiff has wholly failed to satisfy her burden as she has failed to address the factors addressed above as well as the relevant law.

The first step in the Court's venue analysis is to determine whether the instant action could have been brought in the transferee district—the District Court in Oregon. Pursuant to 28 U.S.C. § 1391(b), a civil action may be brought in any of the following:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

This action could not have been brought in the District Court of Oregon. Defendant is a California family law attorney that resides in San Diego, California. (Cook Decl. ¶ 3, Doc. No. 81-1.) Moreover, Defendant states that he does not have an office in Oregon, has never resided in Oregon, and never performed any work related to the matters described in Plaintiff's complaint in Oregon. (*Id.* ¶ 4.) Most notably, Defendant states that he was contacted by Plaintiff to represent her in a marital dissolution action that was pending in San Diego. (*Id.* ¶ 5.) Consequently, the legal work connected to this action, including drafting pleadings, and attending hearings on behalf of Plaintiff was made in San Diego. (*Id.* ¶ 6.) In sum, as Defendant resides in San Diego, and the events giving rise to the claim occurred in San Diego, this case could not have originated in Oregon. Thus, Plaintiff's motion fails at this threshold boundary. *See Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. Aug. 2, 2013).

Nevertheless, had the Court proceeded onto the second step, the fairness factors delineated above also would similarly demonstrate that transfer to the District Court of Oregon is improper. First, as already mentioned, the majority of the work Defendant performed for Plaintiff's case was done in San Diego. Thus, though a strong presumption exists in favor of a plaintiff's choice of forum, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981), a plaintiff's choice of forum is entitled to less weight where the forum lacks a significant connection to the transactions giving rise to the plaintiff's claims, *Pac. Car. &*

*Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("Plaintiff's choice of forum, then, is not the final word."). Second, as Defendant would be the main witness to this lawsuit and he resides in San Diego, the convenience of the witness factor weighs heavily against transfer. (Doc. No. 81-1 ¶ 3 (*see Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092–93 (N.D. Cal. 2002) (explaining that "courts look to who the witnesses are, where they are located, what their testimony will be, and why such testimony is relevant.")).) This factor is often recognized as the most important factor considered in ruling on a motion under § 1404(a). *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009).

The Court notes that Plaintiff states that she has over ten witnesses in her hometown of Oregon who will testify to her suffering. (Doc. No. 67 at 25.) In balancing convenience of the witnesses, "primary consideration is given to third part[ies][.]" *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) (citation omitted). However, Plaintiff has the burden to define the "nature and quality of the witnesses' testimony with respect to the issues of the case[,]" and must "specifically name or describe their testimony[,]" (*Id.*) Plaintiff has not done so here.

As to the ease of access to evidence, the familiarity of each forum with the applicable law, and local interest in controversy factors, they weigh neutrally. *See Metz*, 674 F. Supp. 2d at 1149 (explaining that "advances in technology have made it easy for documents to be transferred to different locations.") (citation omitted); *see also Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1216 (S.D. Cal. 2013) ("[C]ourts in [one state] are fully capable of applying [another state's] substantive law.") (citation omitted).

Finally, the Court finds that transfer would not be in the interests of justice. Plaintiff not only chose to file two federal court cases in the Southern District of California, including this one, (17-cv-00961-AJB-WVG; 18-cv-00572-AJB-WVG), but Plaintiff has been actively pursuing a case that she voluntarily filed in the Superior Court of California. (Doc. No. 47; Doc. No. 81 at 6.) Thus, Plaintiff's request to transfer this case to the District Court of Oregon, over a year after she filed her initial federal complaint, does not "prevent

the waste of time, energy and money" nor does it "protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1965) (internal quotation marks omitted). Moreover, Plaintiff's request seems grounded in her desire to forum shop.

Accordingly, as Plaintiff has failed to satisfy her burden in demonstrating that the present matter could have been brought in the transferee district and that the fairness factors support transfer to the District Court in Oregon, Plaintiff's motion to transfer venue is **DENIED**.

B. Plaintiff's Motion for Leave to Amend

Next, the Court analyzes whether Plaintiff should be allowed leave to amend her complaint. Plaintiff seeks leave to file an amended complaint based on newly discovered facts, new claims, and additional requests for relief. (*See generally* Doc. No. 71.) Defendant vehemently opposes the request arguing that amendment would be futile, would prejudice Defendant, and is an end-run around the motion to dismiss. (*See generally* Doc. No. 82.)

Federal Rule of Civil Procedure 15 states: "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to allow amendment, a court considers factors such as undue delay, bad faith, undue prejudice to the opposing party, or futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). "Not all of the [Foman] factors merit equal weight . . . it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d 1052.

After a review of Plaintiff's motion and Defendant's opposition, the Court finds leave to amend appropriate. The Court notes that it is sensitive to Defendant's argument that he will be prejudiced if Plaintiff is given leave to amend. (Doc. No. 82 at 8.) Especially

in light of the fact that Plaintiff has already amended her complaint twice and that this is the second time she has sought leave to amend **after** Defendant filed his motion to dismiss. (*Id.* at 9.) Thus, Defendant argues that he will suffer unnecessary litigation expenses and undue prejudice if Plaintiff is allowed to file her proposed third amended complaint. (*Id.* at 10.) However, "litigation expenses alone do not equal prejudice." *Clark v. Citizens of Humanity, LLC*, No. 14-CV-1404 JLS (WVG), 2016 WL 4597527, at *3 (S.D. Cal. May 3, 2016) (citation omitted); *see also Charcoal Companion, Inc. v. Target Corp.*, No. C09-01417 HRL, 2009 WL 3046020, at *1 (N.D. Cal. Sept. 23, 2009) ("[L]itigation expenses alone do not equal prejudice.").

The remainder of Defendant's opposition brief focuses solely on the futility of Plaintiff's proposed complaint. (Doc. No. 82 at 11–28.) However, "[d]enial of leave to amend on [futility] is rare. Ordinarily, courts will defer consideration of [futility] challenges . . . until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003); *accord Green Valley Corp. v. Caldo Oil Co.*, No. 09-CV-04028-LHK, 2011 WL 1465883, at *6 (N.D. Cal. Apr. 18, 2011) (noting "the general preference against denying a motion for leave to amend based on futility[.]"); *see also Pilavskaya v. Henderson*, No. CV 11-4075 CAS (Ex), 2012 WL 3279517, at *5 (C.D. Cal. Aug. 9, 2012) ("Whether [] claims are properly pled is better left for a motion to dismiss.").

Consequently, in light of the Ninth Circuit's extremely liberal policy favoring leave to amend in the pro se context, the Court **GRANTS** Plaintiff leave to amend. However, in an effort to keep this case moving forward, if and when Defendant files his next motion to dismiss, a motion for leave to amend filed **after** the motion will not be entertained by this Court.

As leave will be permitted, Defendant's motion to dismiss and Plaintiff's motion to file a sur-reply to Defendant's motion to dismiss are **DENIED AS MOOT**. (Doc. Nos. 58, 90.)

///

C.  Plaintiff's Motion for Declaratory Judgment

Plaintiff requests a declaratory judgment to acknowledge the following facts:

1. The Court finds that the minor child, always an Oregon resident, William Robert Stanton, before, during and after the dissolution of marriage at all times was and is entitled to receive child support until he was at least twenty one, while attending school.
2. The subject matter jurisdiction of the minor child, William Robert Stanton, at the time of the Dissolution of Marriage and now, entitles him to a comprehensive medical plan based on his father's military status.
3. The Defendant COOK as an attorney with a law firm is subject to the Fair Debt Collections Practice Act regulations and the Rosenthal Act.
4. The Klinedinst firm was hired by Defendant COOK on or about 09/2017, the same month Defendant COOK stopped sending bills to Plaintiff SMITH.
5. Plaintiff SMITH signed her contract in Beaverton, Oregon not California.
6. Plaintiff SMITH as an ex-military spouse and based on Title 10, United States Code, Section 1408, passed in 1981 was not mandated to return to any court to collect arrears because her retirement was to have been done properly at the time of divorce.
7. The court grant any or all of this order.
8. The court grant any federal relief as may be proper.

(Doc. No. 60 at 5–6.) In opposition, Defendant argues that the motion for declaratory judgment is not supported by the law and lacks merit. (*See generally* Doc. No. 79.)

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy[.]" 28 U.S.C. § 2201(a). The "actual controversy" requirement of the DJA is the same as the "case or controversy" requirement of Article III of the United States Constitution. *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

Under the DJA, a two-part test is used to determine whether a declaratory judgment is appropriate. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). First,

the court must determine if there exists an actual case or controversy within the court's jurisdiction. *Id*. Second, if so, the court must decide whether to exercise its jurisdiction. *Id.*

Here, Plaintiff has failed to establish "by a totality of the circumstances, the presence of an actual or imminent injury caused by the defendant that can be redressed by judicial relief." *Ours Technology, Inc. v. Data Drive Thru, Inc.*, 645 F. Supp. 2d 830, 834 (N.D. Cal. 2009). In Plaintiff's motion, she lists off the main claims in her operative complaint such as her and her son's home state, that her minor child is obligated to medical insurance until he is twenty-one years old, and that Defendant is subject to the FDCPA. (Doc. No. 60 at 4.) Unfortunately these allegations do not demonstrate that Plaintiff has a "real and reasonable apprehension that [she] will be subject to liability" and thus that she has "presented a justiciable case or controversy." *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1092 (9th Cir. 1992); *see also Societe de Conditionnement En Aluminium v. Hunter Eng'g Co. Inc.*, 655 F.2d 938, 943 (9th Cir. 1981) (explaining that the DJA permits suit "once the adverse positions [of the parties] have crystallized and the conflict of interests is real and immediate.") (citation omitted).

Specifically, the complaint seeks to "redress past alleged wrongs in connection" with Defendant's representation of Plaintiff in her child support case. *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1112 (E.D. Cal. 2014). This is not "prospective wrongdoing" that supports an actual controversy. *Id*. Thus, in this respect, Plaintiff's motion fails to prove that she is entitled to declaratory relief subject to the DJA. *See Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1173 (E.D. Cal. 2009) ("Britz's declaratory relief is thus not prospective, would not enable the parties to shape their conduct so as to avoid a breach, and is not appropriate."); *see also Babb v. Superior Court*, 3 Cal. 3d 841, 848 (1971) (holding that a declaratory relief claim "operates prospectively, and not merely for the redress of past wrongs.").

The DJA does not grant litigants an absolute right to a legal determination. *Zemel v. Rusk,* 381 U.S. 1, 19 (1965). In fact, the court may, after a full consideration of the merits, exercise its discretion to refuse to grant declaratory relief because the state of the record is

inadequate to support the extent of relief sought. *Nat'l Automatic Laundry & Cleaning Council v. Schultz*, 443 F.2d 689, 703 (D.C. Cir. 1971). Presently, the Court finds relief under the DJA inappropriate and thus **DENIES** Plaintiff's motion.

The Court notes that Defendant filed an objection to Plaintiff's requests for judicial notice in support of her motion for declaratory judgment based on a lack of foundation. (*See generally* Doc. No. 80.) This Court's Civil Case Procedures clearly delineate that "[o]bjections relating to the motion should be set forth in the parties opposition or reply. No separate statement of objections will be allowed." Civ. Case. Proc. II.A. Thus, the Court declines to review Defendant's separately filed objections. Moreover, judicial notice is unwarranted as the Court did not utilize any of the documents in coming to its conclusion. (Doc. Nos. 60-1–6.)

D. <u>Defendant's Motion for an Order Declaring Plaintiff a Vexatious Litigant</u>

Defendant argues that Plaintiff's actions in her state court case and the present litigation justify an order from this Court declaring her a vexatious litigant who should be required to obtain leave of court before making further filings. (*See generally* Doc. No. 93-1.) Plaintiff challenges Defendant's motion in its entirety.[1] (*See generally* Doc. No. 96.)

Federal courts can "regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). However, restricting access to the courts is a serious matter as the "right of access to the courts is a fundamental right protected by the Constitution." *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998). Thus, out of regard for the constitutional underpinnings of the right to court access, "pre-filing orders should rarely be filed," and only if courts comply with certain procedural and substantive requirements. *De Long*, 912 F.2d at 1147.

Accordingly, when district courts seek to impose pre-filing restrictions, they must:

---

[1] The Court notes that Plaintiff's opposition brief is incorrectly titled "Opposition to Defendant's Request for Sanctions." (Doc. No. 96 at 1.)

(1) give litigants notice and "an opportunity to oppose the order before it [is] entered"; (2) compile an adequate record for appellate review, including "a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed," (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as "to closely fit the specific vice encountered." *Id.* at 1147–48.

The second two factors are substantive considerations that "help the district court define who is, in fact, a vexatious litigant . . . ." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1058 (9th Cir. 2007) (internal quotation marks omitted). The Second Circuit considers the following five substantive factors to determine "whether a party is a vexatious litigant and whether a pre-filing order will stop the vexatious litigation or if other sanctions are adequate[]":

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). "In light of the seriousness of restricting litigants' access to the courts, pre-filing orders should be a remedy of last resort." *Ringgold-Lockhard v. Cty. of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014).

Here, Defendant puts into explicit detail Plaintiff's prior litigation history in state court. (Doc. No. 93-1 at 6.) This includes filing a complaint, several amended complaints, and then a notice of withdrawal of pendency of action and a request of dismissal of her complaint. (*Id.*) Defendant then delineates Plaintiff's conduct in this litigation. (*Id.* at 7–9.) Specifically, Defendant outlines Plaintiff's habit of filing motions for leave to amend after Defendant had fully briefed his motion to dismiss. (*Id.* at 7; Doc. Nos. 18, 49, 55.) Additionally, Defendant lists the various motions filed by Plaintiff including a motion for

attorney's fees and to disqualify Defendant as counsel, (Doc. No. 22), two motions for sanctions, (Doc. Nos. 28, 30, 32), a motion for preliminary injunction that was later withdrawn, (Doc. Nos. 33, 37), and a motion for declaratory judgment that was later withdrawn, (Doc. Nos. 43, 51). In sum, Defendant argues that Plaintiff is a vexatious litigant as her motion practice has caused needless expense and an unwarranted burden on the Court. (Doc. No. 93-1 at 15.) The Court disagrees.

In total, Defendant has demonstrated that Plaintiff filed a superior court case and two federal court cases. Three cases is not inordinate. The Court notes that cases in which courts have issued pre-filing orders have involved much more serious examples of abuse of the legal system. *See Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523, 1526 (9th Cir. 1983) (noting 35 actions filed in 30 jurisdictions); *see also Favor v. Harper*, No. CV 17-0165-JGB (JEM), 2017 WL 132830, at *2 (C.D. Cal. Jan. 13, 2017) ("[Plaintiff] has filed at least 50 actions in this district since 2014, and he continues to file new habeas petitions and civil rights complaints on a regular basis."); *Calhoun v. San Diego Cty.*, No. 12CV2596 AJB (JMA), 2012 WL 5878666, at *3 (S.D. Cal. Nov. 21, 2012) (highlighting 26 similar complaints).

Moreover, Defendant has not demonstrated that the motions filed are sufficiently frivolous, harassing, or lacking merit to justify a pre-filing order. *See Goolsby v. Gonzales*, No. 1:11-cv-00394-LJO-GSA-PC, 2014 WL 2330108, at *3 (E.D. Cal. May 29, 2014). Defendant asserts that Plaintiff's conduct has precluded this case from moving forward and that Plaintiff's disregard for proper procedures is getting progressively worse. (Doc. No. 93-1 at 12.) Though the Court recognizes that Defendant has had to expend extra time in this litigation, the Court does not find that Plaintiff's actions can be considered a "flagrant abuse of the judicial process." (*Id.* at 14.)

The Court emphasizes that as Plaintiff is proceeding pro se in this matter, some leeway is warranted. *See Ringgold-Lockhart*, 761 F.3d at 1062–63 (noting that whether a litigant is represented by counsel is helpful in determining vexatious litigant status). Though the Court recognizes that pro se litigants are not immune to a vexatious litigation

finding, at this time, Plaintiff's actions have not reached such a severe level that a pre-filing order is justified. *See Missud v. Nevada*, 861 F. Supp. 2d 1044, 1055–59 (N.D. Cal. 2012) (finding the plaintiff vexatious as he filed eight cases against the same defendant despite multiple court rulings that the defendant was not subject to personal jurisdiction in California and despite losing six cases); *see also Johns v. Town of Los Gatos*, 834 F. Supp. 1230, 1232 (N.D. Cal. 1993) (finding a pre-filing order warranted as the petitioner filed numerous suits and appeals against the same defendants despite the fact that every suit was decided against the plaintiff either on summary judgment or the defendants' demurrers, and three of the cases were affirmed by an appellate court).

Accordingly, looking at both the number and content of the filings, the Court **DENIES** Defendant's motion for an order declaring Plaintiff a vexatious litigant. *See De Long*, 912 F.2d at 1148; *see also Molski*, 500 F.3d at 1059 ("An injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims must not only be numerous, but also be patently without merit.") (citation omitted).

## III. CONCLUSION

As explained in great detail above, the Court **DENIES AS MOOT** Defendant's motion to dismiss, (Doc. No. 58), **DENIES** Plaintiff's motion for declaratory judgment, (Doc. No. 60), **DENIES** Plaintiff's motion to transfer venue, (Doc. No. 67), **GRANTS** Plaintiff's motion for leave to amend her complaint, (Doc. No. 71), **DENIES AS MOOT** Plaintiff's motion for leave to file a sur-reply, (Doc. No. 90), and **DENIES** Defendant's motion for an order declaring Plaintiff a vexatious litigant, (Doc. No. 93). Plaintiff has **fourteen (14) days** from the date of this Order to file her third amended complaint. Failure to do so will result in dismissal of this lawsuit.

The Court notes that though Plaintiff was granted leave to amend, at this juncture, in an effort to help this case proceed, any further motions for leave to amend will be denied if the motion is filed **after** Defendant files a motion to dismiss. Further, as this will be Plaintiff's third amended complaint, Plaintiff is instructed to adequately address and support her claims as well as respond to Defendant's arguments applying the **relevant and**

**proper** law.

**IT IS SO ORDERED**.

Dated: August 29, 2018

_____
Hon. Anthony J. Battaglia
United States District Judge